589 S.E.2d 226

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Roger Paul PARSONS, Defendant Below, Appellant.**

No. 30693.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided June 27, 2003.

Starcher, C.J., and Albright, J., dissented.

John W. Swisher, Esq., Special Prosecuting Attorney, Lonnie C. Simmons, Esq., Special Prosecuting Attorney, Charleston, West Virginia, Attorney for Appellee.

James M. Cagle, Esq., Charleston, West Virginia, Attorney for Appellant.

PER CURIAM:

Former teacher and school administrator Roger Paul Parsons appeals his conviction on 21 counts of third degree sexual assault stemming from his interaction with a junior high school student in the late 1970's. After thorough review of the record and due consideration of his numerous assignments of error, we affirm the conviction.

I.

FACTS

On January 26, 2000, a jury convicted Roger Paul Parsons, a former teacher and school

administrator, of 21 counts of third degree sexual assault against a victim, C.S., who had been a student at the junior high where Mr. Parsons worked. The convictions were for actions taken by Mr. Parsons in the late 1970s when he was a thirty-some-year-old teacher and administrator and the victim was in the eighth and ninth grades. The January 2000 convictions came in the second trial against Mr. Parsons. The first had ended in a mistrial on May 21, 1997, when in the third day of jury deliberations a bailiff discovered in the jury room a newspaper containing a story about the case.

At the trial the victim, now in her 30's, testified to a series of events from 1977 to 1980, beginning with inappropriate touching and culminating in multiple sexual acts of various kinds. More specifically, C.S. testified that her sexual interactions with Mr. Parsons began when he would call her out of class and then, alone with her in his office, kiss her, fondle her, and demand she fondle him. Over time, Mr. Parsons met many times with C.S., often taking her to a park or to his home in his car, making her conceal herself on the way there and back. During these visits, the two engaged in oral sex, and eventually sexual intercourse, all before C.S. had reached the age of 16.[1]

C.S. also testified that on several occasions Mr. Parsons threatened her, or implicitly threatened her. She testified that once, when Mr. Parsons was shooting at some birds in his yard, he turned the gun on C.S. and speculated on how the birds felt being shot at. She testified that, on another occasion, Mr. Parsons allegedly told C.S. that he could slit her wrists a certain way that could not be treated and make it look like a suicide. C.S. claimed that on yet another occasion when chopping wood, Mr. Parsons allegedly told her to put her head on the chopping block and then swung the axe toward her neck, catching it with his other hand. C.S. testified that Mr. Parsons made other threats against her, and her family, and that she feared for her life, and theirs, if she had told anyone of the "relationship."

In 1982, some time after the incidents charged, when C.S. was a junior in high school, she went to her minister and told him of her interactions with Mr. Parsons. The minister met with Mr. Parsons, who claimed to care deeply for C.S., and, according to the minister's testimony, did not expressly deny having a sexual relationship with her. Although the minister advised both to tell the parents of C.S., nothing further happened for several years. Then in 1984, C.S., accompanied by the minister, sought a meeting with the then-principal of the junior high school, in an effort to get Mr. Parsons out of the school system. C.S. was advised that without going public with all her claims, nothing could be done. Finally, in September 1992, C.S. reported her claims to the police, setting in motion the criminal prosecution of Mr. Parsons.

At the end of the 1992–1993 school year, Mr. Parsons resigned as an employee of the Kanawha County Board of Education. At about the same time, Mr. Parsons agreed to enter a guilty plea to a one count information of violating W. Va.Code § 61–8B–9, for a misdemeanor offense of sexual abuse in the third degree. Mr. Parsons was to enter this plea before former Judge John Hey on January 7, 1994, but Judge Hey refused to accept the plea agreement. Subsequently, C.S. wrote the court and requested the appointment of a special prosecutor to pursue additional charges against Mr. Parsons. Judge Zakaib appointed attorney John Swisher as special prosecutor and later ordered the calling of a special grand jury to hear the allegations against Mr. Parsons.

The grand jury handed down a 35 count indictment, the first 21 charges of which were in relation to C.S., with the other charges relating to acts committed by Mr. Parsons against several other females, ranging in time from 1959 through 1972. As noted above, Mr. Parsons was tried, on all 35 counts, from May 5 to May 21, 1997, but the discovery of a newspaper in the jury room lead to a mistrial. Before the next trial began, the lower court ruled that only the

---

1. The testimony of C.S. was extremely graphic and explicit, and we do not find it necessary to relate the details in this opinion.

first 21 counts of the indictment, all concerning C.S., were valid and the other counts violated the *ex post facto* clause of our Constitution. The court found that, because the statute allegedly violated by Mr. Parsons was not in force until 1976, and the other counts concerned events that occurred before that time, he could not be tried for those counts. However, the other alleged victims were permitted to testify in the second trial pursuant to Rule 404(b) of the West Virginia Rules of Evidence, discussed *infra.*

The second trial began on January 6, 2000 and ended on January 26 with the jury finding Mr. Parsons guilty of all 21 counts. The court sentenced Mr. Parsons to 1 to 5 years in prison for each of the first ten counts, with the sentences to run consecutively, and then 1 to 5 years on the remaining counts, with those sentences to run concurrently with the forgoing 10 counts. The lower court denied his motion for a judgment of acquittal and/or a new trial on March 9, 2001. On appeal, Mr. Parsons makes numerous assignments of error, which we shall discuss in turn. Because we find each of these assignments unpersuasive, we affirm the decision of the lower court.

## II.

## STANDARD OF REVIEW

■ This Court has explained that it affords great deference to evidentiary rulings made by a trial court.

"The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds, State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. pt. 1, *State v. Calloway,* 207 W.Va. 43, 528 S.E.2d 490 (1999); *accord,* syl. pt. 4, *Riggle v. Allied Chem. Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989); *State v. Copen,* 211 W.Va. 501, 566 S.E.2d 638 (2002) (per curiam). Stated another way:

"The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admissibility of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard." Syllabus Point 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. pt. 9, *Smith v. First Community Bancshares, Inc.* 212 W.Va. 809, 575 S.E.2d 419 (2002). As the Court in *McDougal* noted of the Rules of Evidence: "As the drafters of the rules appear to recognize, evidentiary and procedural rulings, perhaps more than any others, must be made quickly, without unnecessary fear of reversal, and must be individualized to respond to the specific facts of each case." *McDougal v. McCammon,* 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995). Bearing these standards in mind, we turn to a discussion of the case at hand.

## III.

## DISCUSSION

Mr. Parsons assigns a large number of errors, arguing that each should be sufficient to reverse his conviction. While we find some more meritorious than others, ultimately we conclude that Mr. Parsons' conviction should stand. We examine his arguments in turn.

### A.

### The "Rape Shield" Statute

■ Mr. Parsons argues that the lower court erred when it ruled that W. Va.Code § 61-8B-11 (1986) prohibited the admission of any evidence of a consensual sexual relationship between Mr. Parsons and C.S. *after* she turned 16 (which he alleged continued for some time thereafter). Mr. Parsons argues that the existence of such a consensual relationship would explain why C.S. knew certain things about the interior of Mr. Parsons' house and could explain why C.S. complained to authorities, i.e., because she was unhappy that the relationship had ended. The statute

in question is often referred to as the Rape Shield Statute. It provides in pertinent part:

(a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, That such evidence heard first out of the presence of the jury is found by the judge to be relevant.

W. Va.Code § 61–8B–11 (1986). Based upon this statute, the circuit court refused to allow a great deal of the testimony Mr. Parsons wished to introduce regarding the sexual relationship that allegedly existed between the two of them after C.S. had turned 16.

Mr. Parsons alleges that the court's exclusion of his proffered evidence of this relationship effectively denied him any meaningful defense to the charges against him. The State argues that any evidence of such a relationship should have been excluded. It argues that, because a victim's age makes consent impossible with any partner, the issue of whether or not a victim had sex with other partners, or with a defendant, *prior* to the alleged incident, is irrelevant.

Mr. Parsons points out that the second portion of the statute (presumptively dealing with victims who have reached the age of consent), allows evidence of a victim's *prior* consensual sex acts with a defendant, to show that a victim actually consented to the sex act in question. Clearly such evidence could be relevant to the issue of consent in those cases where a victim and a defendant had engaged in a consensual sexual relationship prior to the act in question.

As the State observed, an underage victim's consent cannot technically be at issue, because the law deems the underaged victim utterly incapable of consent. Thus it logically follows that evidence of *prior*, allegedly consensual acts would be of no help to a

defendant (since the victim would have been even younger), and should be excluded. However, Mr. Parsons, who denied any pre–16 sexual contact, claims that he should have been permitted to argue that *later* consensual acts occurred with C.S. *after* she turned 16, and that it is because of this post–16 consensual relationship that C.S. knew certain things about Mr. Parsons, his house, his cars, and other information.

While it is true that the trial court excluded the majority of the evidence that Mr. Parsons wished to introduce, we note that the court did allow Mr. Parsons to testify that he and the minister discussed the possibility of Mr. Parsons and C.S. getting married. Mr. Parsons also testified that C.S. was in his home at some point when his ex-wife or children were present when C.S. was no longer in junior high. He testified that C.S. visited him at his office in 1989 or 1990, when she would have been 25 or 26 and married, to ask him for money for therapy she was undergoing. He testified that during this visit she told him that she was having problems with her sex life with her husband. Finally he testified that she called him in 1992, when she would have been 27 or 28 in order to, in his words "talk about she and I[sic]."

The Court has described the decisions a judge must make when excluding evidence under our rape shield statute:

The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

Syl pt. 6, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999). We note that the statute is arguably silent on the very narrow issue raised by Mr. Parsons, and can imagine a

case where this logic might be more persuasive. However, we believe in this case that, right or wrong, Mr. Parsons did have an opportunity to introduce evidence on this subject. The court did allow significant testimony on this issue; the jury heard his testimony and was unmoved. In summation, we are unable to say that the court committed "a clear abuse of discretion" in excluding the remainder of the testimony Mr. Parsons wished to offer. Thus we reject this assignment of error.

## B.

### Rule 404(b) Evidence

 As stated above, the special grand jury originally charged Mr. Parsons with additional counts, alleging that he sexually assaulted or abused other victims, most while they were students in junior high school. Although these counts were not part of the second trial, the court did allow several of the alleged victims to testify at the second trial as so-called 404(b) witnesses.[2]

 The alleged victims all testified to suggestive comments, and some kind of inappropriate conduct, all when they were junior high school-aged, or younger. Ordinarily, our law does not permit the introduction of evidence concerning a defendant's other sexual offenses to show that the defendant was more likely to have committed the crime in question. "It is impermissible for collateral sexual offenses to be admitted into evidence solely to show a defendant's improper or lustful disposition toward his victim." Syl. pt. 7, *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). However, when considering a sexual offense committed against one below the age of consent, the Court has stated:

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition to-

wards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), it is overruled.

Syl. pt. 2, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Thus it is clear that the evidence in question was admissible, unless some other factor should have prevented its admission.

### i.

### Timeliness

Mr. Parsons first argues that the lower court missed an important aspect of our holding in *Edward Charles L.*, namely, that the evidence can only be admitted, "provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment." *Id.* Mr. Parsons argues that the other evidence, relating to incidents alleged to have occurred in 1959–63, 1965–66, 1968–71, 1965–68, and 1966–67, were all too distant in time to be admissible. The lower court considered this, and concluded that the witnesses presented a continuous chain of conduct that demonstrated Mr. Parsons' sexual interest in underaged girls over a twenty-year period. The court noted that it might have ruled differently had it been faced with one, isolated event from many years ago, but because the testimony suggested that the conduct was continuous, it was all admissible. Considering the facts of this case and the broad discretion granted to trial courts on evidentiary matters, *Calloway, supra*, we do not believe the lower court abused its discretion in finding this evidence timely.

**2.** Rule 404(b) of the West Virginia Rules of Evidence provides:

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, oppor-

tunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

## ii.

## Shotgunning

Mr. Parsons also argues that, even if this testimony were otherwise admissible, the lower court erred in allowing the prosecution to get away with "shotgunning" the evidence. As this Court has observed "allowing the prosecution to admit an unnecessary quantity of extrinsic bad acts evidence [is] a practice sometimes referred to as 'shotgunning.'" *State v. Zacks,* 204 W.Va. 504, 511, 513 S.E.2d 911, 918 (1998) (per curiam). This Court has expressed its disapproval of this practice:

> "A prudent prosecutor limits himself to what is needed to prove the charge in the indictment. In the process of proving the charge, other offenses may sometimes come to light incidentally, but when the prosecution devotes excessive trial time to this type of 'background' material, it runs the risk of trespassing into the impermissible area and jeopardizing any resulting conviction." *United States v. Mastrototaro,* 455 F.2d 802, 804 (4th Cir.1972).

*State v. Thomas,* 157 W.Va. 640, 656, 203 S.E.2d 445, 456 (1974); *accord, State v. McGinnis,* 193 W.Va. 147, 163, 455 S.E.2d 516, 532 (1994). In order to prevent this from occurring, the Court established guidelines for the introduction of such evidence:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994). Our review of the record shows that the lower court followed the requirements of *McGinnis* in its handling of the 404(b) evidence. Moreover, we believe that the incidents were neither so distant in time, nor so excessively numerous, as to deny Mr. Parsons a fair trial. Thus we must reject this assignment of error.

## C.

## Petit Jury Issues

Mr. Parsons argues that the jury was not properly constituted, and that the court should have struck certain jurors for cause. First he claims that the lower court erred in using jurors who had been called at some point during the September term of court for a trial that continued into the January term of court. In support of his argument he suggests that W. Va.Code § 52–1–23 (1986) prohibits the actions taken by the circuit court. That section provides:

> In any two-year period a person may not be required:
>
> (1) To serve or attend court for prospective service as a juror more than thirty court days, except if necessary to complete service in a particular case;
>
> (2) To serve on more than one grand jury;
>
> (3) To serve as both a grand and petit juror; or
>
> (4) To serve as a petit juror at more than one term of court.

*Id.* Our Trial Court Rules establish the terms of court for the various counties. The rules indicate that the first day of a term of court

shall be, "[f]or the county of Kanawha, on the second Monday in January, May, and September." Rule 2.13., West Virginia Trial Court Rules.

In the instant case, the judge began selecting a jury on January 6, 2000, and the January term of court began that year on the 10th, which was the second Monday in January 2000. The jurors were sworn on January 12, 2000, and the jury had rendered its verdict by January 26, 2000. Mr. Parsons suggests that the fact that several jurors indicated on their questionnaires that they were concerned about serving for a long trial, coupled with the fact that these jurors were technically from the prior court term, together amounts to a serious error. We disagree. We note that the statute on which Mr. Parsons relies allows for an extension of juror service to complete an on-going case. While the actual trial of this case did not begin until the next term of court, we do not believe the time these jurors served beyond January 10 in any way affected Mr. Parsons' defense; thus we reject this assignment of error.

■■■■ Mr. Parsons also suggests that the court erred in not striking certain jurors for cause. It is clear that "[t]he decision to grant a motion to strike a juror for cause is within the sound discretion of the trial court." *Wheeler v. Murphy*, 192 W.Va. 325, 331, 452 S.E.2d 416, 422 (1994) (citations omitted). Moreover, "[t]he trial court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice is demonstrated." *State v. Miller*, 197 W.Va. 588, 605, 476 S.E.2d 535, 552 (1996) (footnote and citation omitted); *accord, State v. Swims*, 212 W.Va. 263, 268, 569 S.E.2d 784, 789 (2002).[3]

■■ Specifically Mr. Parsons claims that potential juror Gunno should have been struck by the court because her brother was a Charleston police officer and she was a school teacher and had apparently heard some rumors within the school system regarding the defendant. We note that the juror indicated that she could still be fair and

impartial, and that the trial court considered this in its decision to not strike her for cause. We do not believe the trial court abused its discretion in not striking this juror.

■■■■ Mr. Parsons argues that the court should have granted his motion to strike for cause potential juror Thomas because she had experienced some sort of abuse by a doctor years earlier. Again, we do not believe the trial court abused its discretion in this regard, and, moreover, events mooted this issue the next day when the State chose to strike potential juror Thomas. Finally, Mr. Parsons argues that potential juror Lipscomb should have been eliminated from the jury pool because she was a clinical social worker who had treated victims of sexual abuse. Given the record before us, we are unable to say that the court abused its discretion in denying Mr. Parsons' motions to strike. In sum, we find none of Mr. Parsons' arguments related to jury composition persuasive.

### D.

### Trial Judge's Encounter with a Witness

■■ At the first trial, Mr. Parsons moved the judge to recuse himself because he had allegedly run into one of the 404(b) witnesses (and alleged co-victims) at a local restaurant, and had also seen a witness in the hallway of the courthouse. The judge explained the facts of the encounters on the record, and after finding no basis for recusal, denied the motion. It is not clear that Mr. Parsons properly preserved this issue for appeal, but we nonetheless find it unavailing.

Our judges are not shipped into West Virginia from some remote location to hear cases, and then shipped back every evening. Judges live in the communities where they preside, and quite naturally may occasionally run into parties, witnesses, counsel, or jurors outside the courtroom. See, *In the Matter of Kaufman*, 187 W.Va. 166, 416 S.E.2d 480 (1992) (Neely J., dissenting). Our judicial

---

3. *But, c.f., O'Dell v. Miller*, 211 W.Va. 285, 289, 565 S.E.2d 407, 411 (2002) ("However, as far as is practicable in the selection of jurors, trial courts should endeavor to secure those jurors who are not only free from but who are not even subject to any well-grounded suspicion of any bias or prejudice." (citations omitted)).

system relies upon judges to follow their ethical obligation to recuse themselves when appropriate. We believe that the judge in this case made an adequate record of the event and then properly determined that grounds for recusal did not exist.

## E.

### The Grand Jury and the Indictment

 Mr Parsons also seeks a review of the instructions given to the grand jury. He claims that, because the grand jury indicted him on several counts, later determined to be invalid, it must have not received the correct instructions. He appears to suggest that improper instruction of the grand jury would merit a reversal in this case. As noted by Mr. Parsons, the lower court determined that a great number of the counts against him could not be pursued in the second trial. We fail to see how a flawed grand jury instruction could affect the outcome of this case if the lower court has already corrected any potential infirmity by striking the invalid counts from the indictment. "Generally, the sufficiency of an indictment is reviewed *de novo.* An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. pt. 2, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). As a practical matter, by dismissing the other charges, the court spared Mr. Parsons any prejudice he might have suffered had those counts been tried. Accordingly, we find this assignment of error unavailing.

 Mr. Parsons also claims that the indictment should have been dismissed due to the passage of time between the relevant events and his prosecution. While it appears that Mr. Parsons did not preserve this argument in his second trial, we may dispense with it briefly. The Court has noted that "West Virginia has no statute of limitations affecting felony prosecutions." *State v. Car-*

*rico,* 189 W.Va. 40, 43, 427 S.E.2d 474, 477 (1993). Citing a U.S. Supreme Court case, we have observed:

> It was said in *Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966), that "[t]here is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect.... Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

*State v. Davis,* 205 W.Va. 569, 578, 519 S.E.2d 852, 861 (1999). In those cases that have found that a defendant was prejudiced by delay, usually the State had known of the crime, and the defendant's identity and whereabouts. *See, State ex rel. Leonard v. Hey,* 269 S.E.2d 394 (1980) (delay of eleven years between the commission of crime and indictment is presumptively prejudicial to defendant and violates due process, when State knew of defendant's location and identification). However, the State may still rebut that presumption. *Id.* Moreover, the Court has explained that:

> To rebut the presumption of prejudice established in *Leonard,* we held in *Hundley v. Ashworth,* 181 W.Va. 379, 383, 382 S.E.2d 573, 576–77 (1989) that the State need only demonstrate the delay was not orchestrated to gain a tactical advantage over the defendant. If the State is able to make such a showing, the delay in obtaining the indictment does not violate federal or state due process.

*State v. Davis,* 205 W.Va. 569, 579, 519 S.E.2d 852, 862 (1999).[4]

 We believe that Mr. Parsons cannot show that the State knew of the crime at issue in this case before the early 1990's at

4. Specifically, the Court held in Syllabus Point 2 of *Hundley:*

The Due Process Clause of the Fifth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution require the dismissal of an indict-

ment, even if it is brought within the statute of limitations, if the defendant can prove that the State's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense.

best. We do not believe he would, in any event, be able to prove that the State deliberately delayed indicting him to gain some advantage; thus we reject this argument.[5]

### F.

### Proffered Jury Instructions

 Mr. Parsons claims that the trial court should have given two instructions he offered, one concerning battery, and one concerning jury nullification. A circuit court judge has great discretion when instructing a jury.

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. pt 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995); *accord*, syl. pt. 7, *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001). Mr. Parsons' battery instruction would have defined the term according to W. Va.Code § 61-2-9(c) (1978) and would have informed the jury that battery is a misdemeanor for which the statute of limitations had run. He suggests that this would have allowed the jury to find that Mr. Parsons had committed an "insulting touching" but not a sexual act. We agree with the State that this instruction was confusing, and do not believe the trial court erred in not giving it.

 Mr. Parsons' second instruction would have explained the concept of jury nullification, as described in the case of *State v. Morgan Stanley & Co., Inc.*, 194 W.Va. 163, 459 S.E.2d 906 (1995). As stated in that case, the Court suggested that "there remains an abiding respect for the *power* of the jury to nullify oppressive law, even if there is no express *right* on the part of the jury to do so." *Id.* 194 W.Va. at 173, 459 S.E.2d at 916. Taking no position on the legitimacy of such an instruction, had it been offered, we do not believe that the lower court's decision not to allow it could be considered an abuse of its discretion.

### G.

### Psychiatric Records

 Mr. Parsons argues that he had requested all potentially exculpatory material, including psychiatric records, but that certain records were not disclosed to him. Specifically he complains that the was denied access to the record of a Dr. Settle, who had treated C.S. We note that:

> When the mental health records of a prospective witness are sought for the purpose of impeaching the witness' credibility, the circuit court should first examine the records *ex parte* to determine if the request is frivolous. If the court finds probable cause to believe that the mental health records contain material relevant to the credibility issue, counsel should be allowed to examine the records, after which an *in camera* hearing should be held in which the requesting party's counsel designates the parts of the records he believes relevant, and both sides present arguments on the relevancy of those parts.

Syl. pt. 3, *Nelson v. Ferguson*, 184 W.Va. 198, 399 S.E.2d 909 (1990). Our review of the record indicates that Mr. Parsons raised this issue during the second trial, and that the court and counsel all appeared to agree that the Settle records had been reviewed at the first trial, and found not to be helpful to Mr. Parsons' case. Although, at the second trial, defense counsel asked the judge to review the court's file on this issue, to which the judge agreed, it appears that the issue

---

5. Mr. Parsons also alleges that the special prosecutor was empowered to examine only the allegations made by C.S., and not those made by others, and that the prosecutor had not been selected in accordance with W. Va.Code § 7-4-6. We note that the special prosecutor discovered the alleged crimes against the other victims while investigating the allegations made by C.S., and

believe it was proper for him to investigate the claims made by other victims as well. Again, we point out that Mr. Parsons ultimately was not tried for those alleged crimes. Additionally, we feel that the way in which the special prosecutor was appointed does not amount to reversible error in this case.

was never raised again by any party. The record suggests that the lower court followed the *Nelson* requirements in the first trial and determined that there was no information contained in the records that would be admissible in Mr. Parsons' defense. Again, our standard of review in such evidentiary matters is deferential to the lower court judge, *Calloway, supra.* We cannot say the judge abused his discretion in denying Mr. Parsons' request.

## H.

### Therapist's Report

■ Mr. Parsons claims that a report from a Ms. Loeb, a Texas therapist who had treated C.S. for post-traumatic stress disorder, was only made available to him as an attachment to a pre-sentencing report he received after his conviction. Mr. Parsons notes that the report contains language suggesting that C.S. had difficulty recalling "important aspects of the trauma for many years." He also notes that the report refers to severe depression and suicidal thoughts suffered by C.S. Mr. Parsons argues that the State's failure to provide this report to him was reversible error because it contained exculpatory evidence. However, as he points out, the lower court did not have an opportunity to review this issue, so Mr. Parsons suggests that this Court regard it as plain error.

The Court has held that: "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." Syl. pt. 4, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982). The State also read portions of this report into the record. When the portion .cited by Mr. Parsons is reviewed in the context of the other statements, we believe that the report cannot be said to be exculpatory. It contains the therapist's conclusion that C.S.'s depression is a direct result of the sexual abuse she received from Mr. Parsons. We note that Mr. Parsons had multiple opportunities to cross-examine C.S. regarding her memory of the assaults and her recent mental state. She provided very specific details about Mr. Parsons, his home, his car, and the activities that took place. In light of these factors, we do not believe that, had Mr. Parsons seen the Loeb report prior to trial, that the outcome would have differed. That is, we do not feel that the report contained any novel information that would have created "a reasonable doubt as to his guilt." *Hatfield, supra.* Thus we do not believe the lower court erred in this regard.

## IV.

### CONCLUSION

For the reasons stated, the order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

Chief Justice STARCHER and Justice ALBRIGHT dissent and reserve the right to file dissenting opinions.