617 S.E.2d 467

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Dewey Daniel WINEBARGER, Defendant Below, Appellant.**

**No. 31696.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 22, 2005.

Filed: May 11, 2005.

Sidney H. Bell, Prosecuting Attorney of McDowell County, Welch.

Joseph A. Colosi, Lisa Robinette Colosi, Bluewell.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

This is an appeal by Dewey Daniel Winebarger (hereinafter "Appellant") from a jury determination in the Circuit Court of McDowell County finding the Appellant guilty of voluntary manslaughter of his son-in-law, Mr. Kenny Price (hereinafter "decedent" or "Mr. Price"). On appeal, the Appellant contends that the lower court erred in admitting certain testimony concerning allegations of the Appellant's prior utilization of weapons. Upon thorough review of the arguments, briefs, record, and applicable precedent, this Court affirms the determinations of the lower court.

## I. Factual and Procedural History

The Appellant and his wife, Regina, own several small businesses in McDowell County, West Virginia, including a service station, rental property, and a bar and grill. For personal protection when transporting monetary deposits or traveling on rural roads, the Appellant occasionally carried a handgun. On the evening of December 23, 2001, the Appellant and his wife had loaned automobiles to their daughter and her husband, the decedent Mr. Price. The Appellant had previously instructed that the vehicles were not to be taken to a particular location known as Joe's Bar. While driving home that evening from a Christmas party in Bluefield, West Virginia, the Appellant and his wife noticed that their vehicles were parked outside Joe's Bar. They took the cars home, leaving their daughter and son-in-law to find other transportation back to their own home.

When Mr. Price left the bar and obtained transportation, he stopped at the Appellant's home, and an argument ensued between the Appellant and Mr. Price regarding the utilization of the Appellant's vehicles. The Appellant maintained that Mr. Price was intoxicated and became violent and aggressive during the altercation. The Appellant contends that he attempted to use his .22 caliber derringer to fire a warning shot into the air. The bullet struck Mr. Price in the neck and fatally wounded him.

The Appellant was indicted for first degree murder and was ultimately found guilty of voluntary manslaughter and sentenced to ten years. Although the Appellant's petition for appeal to this Court contained multiple assignments of error, this Court accepted this appeal on only two grounds, both dealing specifically with the introduction of Rule 404(b) evidence against the Appellant.[1] The

---

1. Rule 404(b) of the West Virginia Rules of Evidence provides as follows:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the gener-

Appellant first contends that the lower court erred in admitting evidence of previous gun-related acts allegedly committed by the Appellant five to fifteen years prior to the date of the decedent's death. Second, the Appellant contends that the lower court erred in failing to declare a mistrial when certain testimony was elicited at trial from the decedent's aunt, Ms. Pat Price, regarding conversations concerning allegations of the Appellant's prior threats toward the decedent. We confine our evaluation and discussion below to those two issues.

## II. Standard of Review

In *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court explained the standard of review for a Rule 404(b) issue as follows:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

196 W.Va. at 310–11, 470 S.E.2d at 629–30 (footnote omitted).

■ In *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), this Court explained that this Court will "review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." 193 W.Va. at 159, 455 S.E.2d at 528.

> Our function on . . . appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irration-

al that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect.

*Id.*, 455 S.E.2d at 528. Guided by these standards, we consider the substantive issues raised in this appeal.

## III. Discussion

### A. Rule 404(b) Evidence of Brandishing Weapon

#### 1. The Appellant's Assertions

■ The Appellant contends that the lower court erred by permitting the State to introduce evidence that the Appellant had brandished a weapon on other occasions five to fifteen years prior to the date in question.[2] The State maintained that such evidence was introduced to show "the defendant's experience in carrying, handling and brandishing handguns that he used in arguments to gain the upper hand and have his way. This evidence tends to show the absence of mistake or accident. . . ."

The Appellant contends that despite the lower court's *in camera* investigation of these prior events, there is insufficient proof that these alleged incidents actually occurred, as required by *McGinnis*. Further, the Appellant contends that even if such incidents did occur, they were too remote in time to be utilized at trial and were unduly prejudicial to the Appellant.

#### 2. State's Assertions

In response to the Appellant's contentions, the State maintains that the Appellant alleged that the incident in which his son-in-law was killed was essentially an accident and that evidence of prior acquaintance with

---

al nature of any such evidence it intends to introduce at trial.

**2.** These particular other incidents did not involve any aggression by the Appellant toward the decedent. The testimony was adduced from three individuals, Arvel Blevins, Roger Rhodes, and Brian Hunley, all testifying that the Appellant had brandished a weapon toward them on prior occasions. In Mr. Blevins' instance, the alleged

brandishing incident occurred in an apartment over a bar and was based upon a disagreement with the Appellant's son, Jonathan. Mr. Rhodes testified regarding the same bar fight incident. Mr. Hunley testified that he had been involved in an altercation with the Appellant's son, Jonathan, and had hit Jonathan approximately thirty times prior to seeing the Appellant coming toward him with a gun.

the use of firearms was therefore appropriate.[3] Furthermore, the State emphasizes that the lower court properly required the State to provide a detailed written notice of its intention to utilize Rule 404(b) evidence and the specific purposes for which the evidence would be offered. The lower court thereafter made findings consistent with the requirements of *McGinnis* that the acts alleged by Mr. Blevins, Mr. Rhodes, and Mr. Hunley actually occurred, that such evidence was relevant, and that the probative value of such evidence outweighed the danger of unfair prejudice under Rule 403.[4] The lower court further ruled that the State could use evidence of three of the five incidents initially offered by the State [5] as tending to prove the absence of mistake or accident and intent. The lower court also provided the jury with an appropriate limiting instruction on two separate occasions.

### 3. Admissibility of Rule 404(b) Evidence

 This Court has provided considerable guidance regarding the method of determination of the issue of admissibility of Rule 404(b) evidence. In *McGinnis*, this Court specifically outlined the prerequisites to admission of Rule 404(b) evidence. Rule 404(b) specifies, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith." W.Va. R. Evid. 404(b). However, Rule 404(b) also

> expressly permits the introduction of specific acts in the nature of crimes, wrongs, or acts to prove purposes other than character, including "proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident." Thus, Rule 404(b) permits the introduction of specific crimes, wrongs, or acts for "other purposes" when character is not, at least overtly, a link in the logical chain of proof.

*McGinnis*, 193 W.Va. at 154, 455 S.E.2d at 523. Syllabus point two of *McGinnis* provides as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend

---

**3.** Although the Appellant now claims that he did not assert a defense of accident or mistake, his statement to investigating officers the morning after the decedent's death indicated that he intended to shoot up into the air but unintentionally shot his son-in-law in the neck. Further, counsel for the Appellant indicated during a January 27, 2003, pretrial hearing that the Appellant's "position at the trial will be that, not only was it an accident, but it was, also, you know, the gun was used in self-defense because he was under attack."

**4.** Rule 403 of the West Virginia Rules of Evidence provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** Evidence regarding two other alleged incidents was deemed inadmissible. In those two instances, the State would have offered the testimony of Brenda Hicks and Jamie Bailey to the effect that the Appellant had burned the decedent's clothing in a pile outside his home after an argument with the decedent.

that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syllabus point one of *McGinnis* addresses the usage of the offered evidence and provides as follows:

> When offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The specific and precise purpose for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

See also *State ex rel. Caton v. Sanders,* 215 W.Va. 755, 601 S.E.2d 75 (2004).

In evaluating issues of admissibility of evidence, this Court has also consistently emphasized the extent of discretion vested in the trial court, as follows: "As the control of the scope, latitude and method of introduction of evidence of collateral crimes and charges is vested in the trial court, motions to introduce and motions and objections for exclusion of such evidence are addressed to the sound discretion of the court." Syl. Pt. 14, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). Such discretion also extends to the issue of Rule 403 balancing. In the effort to balance the probative value of other crimes evidence against the danger of unfair prejudice, a trial court enjoys broad discretion, and such discretion will not be overturned absent a showing of clear abuse. *State v. Taylor,* 215 W.Va. 74, 78, 593 S.E.2d 645, 649 (2004). "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, in part, *State v. Derr,* 192 W.Va. 165, 451

S.E.2d 731 (1994). In *State v. Phillips,* 194 W.Va. 569, 461 S.E.2d 75 (1995), this Court also emphasized that evaluation of the probative weight versus the prejudicial weight of evidence is left to the sound discretion of the trial court, with its judgment overturned only upon an abuse of discretion. 194 W.Va. at 581, 461 S.E.2d at 87.

Utilizing the analysis outlined above, in conjunction with the standards of review designated in *LaRock* and *McGinnis,* we find that the lower court performed a rigorous and diligent *in camera* evaluation of the evidence offered by the State and correctly determined that the events actually occurred. The lower court dismissed the jury, explaining that certain matters required attention outside the presence of the jury, and proceeded to hear the testimony of Mr. Blevins, Mr. Rhodes, and Mr. Hunley. Mr. Blevins explained that he, Mr. Rhodes, and the Appellant's son, Jonathan Winebarger, were arguing outside a bar in a parking lot. While Mr. Blevins did not recall the reason for the argument, he did distinctly recall that the Appellant pointed a handgun at him and told him "to get down the road . . . ." Mr. Blevins also indicated that the Appellant had brandished a gun during another altercation in a bar-related disagreement. Mr. Rhodes also testified about the incidents which Mr. Blevins described. The Appellant's son, Jonathan Winebarger, also corroborated the incidents at the bail hearing and the *McGinnis* hearing. Mr. Hunley testified that the Appellant had pulled a handgun partially out of his pocket and threatened him with it when Mr. Hunley was involved in an altercation with Jonathan Winebarger outside the Winebargers' tavern.

Further, the lower court correctly found that the evidence was admissible for a legitimate purpose, to demonstrate the Appellant's intent and the absence of accident or mistake, and thereafter adequately instructed the jury regarding those limited purposes. The lower court instructed[6] the jury as follows:

---

6. The court provided the limiting instruction before the testimony of Mr. Rhodes and repeated it

before the testimony of Mr. Blevins.

Ladies and Gentlemen of the Jury, before you hear testimony from this witness, I need to give you a cautionary instruction.

The State of West Virginia is now going to present evidence of other crimes or wrongs or acts, and you are instructed that these other crimes, wrongs or acts are not admissible to prove the character of a person in order to show that he acted in conformity therewith; however, the evidence you are about to hear is used for the purpose of showing absence of mistake or accident and, also, to show intent.

■ The law of this state is also quite clear on the issue of remoteness of Rule 404(b) evidence. In *State v. Parsons,* 214 W.Va. 342, 589 S.E.2d 226 (2003), for example, this Court approved the admission of evidence of other acts which occurred many years prior to the charged conduct. This Court has explained that the issue of remoteness goes to the weight to be given to such evidence and does not necessarily render it inadmissible. *See State v. McIntosh,* 207 W.Va. 561, 573, 534 S.E.2d 757, 769 (2000). In *McIntosh,* this Court found that sexual assaults occurring four, seven, and thirteen years prior to the charged crimes were properly admitted. The *McIntosh* Court recognized that " 'the decision on remoteness as precluding the admissibility of evidence is generally for the trial court to determine in the exercise of its sound discretion.' " 207 W.Va. at 572, 534 S.E.2d at 768, *quoting State v. Gwinn,* 169 W.Va. 456, 472, 288 S.E.2d 533, 542 (1982).[7] Syllabus point six of *Gwinn* provides: "As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." 169 W.Va. at 457, 288 S.E.2d at 535. In syllabus point five of *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945), this Court explained: "Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of a sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."

As the Nebraska Supreme Court explained in *State v. Burdette,* 259 Neb. 679, 611 N.W.2d 615 (2000), quoted with approval by this Court in *McIntosh,* "[t]he admissibility of evidence concerning prior bad acts under rule 404(2) must be determined upon the facts of each case; no exact limitation of time can be fixed as to when prior acts are too remote to be admissible." 611 N.W.2d at 630. "While remoteness in time may weaken the probative value of evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence." 611 N.W.2d at 630–31 (citations omitted).

Based upon the foregoing, we find no abuse of discretion in the lower court's decision to admit the Rule 404(b) evidence in question. While this Court is hesitant to give blanket approval to the admission of Rule 404(b) evidence occurring fifteen years prior to the charged incident in all cases, the circumstances of this case are such that admission was warranted. The evidence admitted in this case involved substantially similar conduct, similar circumstances, and similar provocations to the offense charged. Reviewing the evidence in a light most favorable to the party offering the evidence, as required by *McGinnis,*[8] we affirm the decision of the lower court that such evidence was not too remote to be properly utilized by the State.

■ Acknowledging the extensive discretion vested in the trial court, we find no abuse of discretion in the lower court's find-

---

**7.** In *Yuncke v. Welker,* 128 W.Va. 299, 36 S.E.2d 410 (1945), this Court stated:

[A]n abuse of discretion is more likely to result from excluding, rather than admitting, evidence that is relevant but which is remote in point of time, place and circumstances, and that the better practice is to admit whatever matters are relevant and leave the question of their weight to the jury, unless the court can clearly see that they are too remote to be material.

128 W.Va. at 311–12, 36 S.E.2d at 416 (citations omitted).

**8.** "In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, in this case the prosecution, maximizing its probative value and minimizing its prejudicial effect." *McGinnis,* 193 W.Va. at 159, 455 S.E.2d at 528.

ing that the probative value of the Rule 404(b) evidence regarding the Appellant's prior threatening use of firearms was not substantially outweighed by the danger of unfair prejudice. As this Court explained in syllabus point three of *LaRock*,

> It is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction.

196 W.Va. at 299, 470 S.E.2d at 618. We find that all these requirements have been satisfied in the case *sub judice*. Rule 403 provides, as quoted above, that "evidence may be excluded if its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." W.Va. Rule Evid. 403 (emphasis supplied). Some degree of prejudice is inherent in Rule 404(b) evidence and cannot be completely eliminated. Rule 403 addresses a situation in which the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The Fifth Circuit Court of Appeals explained this concept as follows in *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir. 1981):

> As this court has consistently held, " 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.' " *Dollar v. Long Manufacturing, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). *See also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980); *United States v. Grassi*, 602 F.2d 1192, 1197 (5th Cir. 1979), *vacated and remanded on other grounds*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980). Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on Proposed Federal Rules of Evidence, 28 U.S.C.A. Rule 403 at 102.

656 F.2d at 1155.

### B. Testimony By Ms. Pat Price

The Appellant also contends that the lower court erred in admitting a particular portion of the testimony of the decedent's aunt, Ms. Pat Price. In a statement provided to police officers, Ms. Price apparently indicated that *someone* had told her that the Appellant had previously threatened the decedent with a gun at some unknown previous time. The officer transcribing Ms. Price's statement mistakenly wrote that *the decedent and his wife Angie* had told Ms. Price that the Appellant had threatened the decedent with the gun.

During trial, counsel for the State cross-examined Ms. Price and asked her if the decedent had "confide[d] in [her] ever from time to time about the problems he had with his family." Ms. Price explained that he had hinted at problems. The State continued: "In fact, he complained to you once about being threatened by Dewey Winebarger, didn't he, with a gun?" Ms. Price answered: "No, he never complained to me about being threatened. He never— He never said anything to me about being threatened, not to me." Testimony continued as follows:

> [The State]: Did you hear that from somebody else?
>
> MR. COLOSI [counsel for Appellant]: Objection.
>
> THE WITNESS: There was one time—
>
> MR. COLOSI: (Interposing) Objection. Objection to what she heard, if she heard anything.
>
> MR. BELL [counsel for State]: I'm not asking what she—
>
> THE COURT: Rephrase your question.
>
> BY MR. BELL:
>
> Q. Well, you recall you gave a written statement to Deputy Blankenship, didn't you?

A. Right, right.

Q. You don't recall putting in that written statement that you were informed that he had threatened Kenny with a gun?

MR. COLOSI: Objection.

THE WITNESS: That's because somebody came into the bar and told me that he was threatened with a gun; that Dewey had a gun. I never saw a gun.

MR. COLOSI: Objection.

THE COURT: Objection is sustained. The jury will disregard and not consider it.

Almost immediately after that exchange, however, counsel for the Appellant attempted to elicit additional information from Ms. Price on redirect examination regarding the statement to police. The testimony progressed as follows:

[MR. COLOSI]: Did Deputy Blankenship put some things in your statement that you did not say?

A. There was one statement towards the end where I think was written down that—

Q. I'm not asking you what was said, okay? I'm just asking you if there was a portion of your statement— Do you recognize this statement?

A. Yes.

Q. Is this your statement?

A. Yes.

MR. BELL: Your Honor, I object to it being confusing and misleading if she can't explain what in there was inaccurate.

THE COURT: What was your question? What were you going to ask her?

MR. COLOSI: I'm going to ask her if Deputy Blankenship put something in her statement that she did not say that wasn't true.

THE COURT: Okay, she can answer that.

BY MR. COLOSI:

Q. Now, referring to this second page, did Deputy Blankenship put something in your statement that wasn't true; that you did not say?

A. There's—

Q. You can answer that yes or no.

A. Yes.

Q. Okay.

MR. COLOSI: Nothing further.

On re-cross examination of Ms. Price, counsel for the State continued the attempt to clarify the apparent confusion between Ms. Price and the officer who transcribed her testimony and asked Ms. Price to explain. Counsel for the Appellant objected, stating "[t]hat's what you just ruled that's not admissible." The lower court overruled the objection and allowed the witness to answer. Ms. Price then explained as follows:

There was a part in the last part of the statement where I said that someone had said that Kenny— that Dewey [the Appellant] had pulled a gun on Kenny [the decedent]. My statement reads that Kenny and Angie told me that Dewey pulled a gun. I didn't say, "Kenny and Angie." I just said, "They told me." Not referring to Kenny and Angie.

Counsel for the Appellant thereafter moved for a mistrial, and the lower court denied that motion.

On appeal of that issue, the State maintains that the testimony was not offered to prove the truth of the matter asserted, since it was simply offered to clarify the issue of whether the investigating officer had included inaccurate information in the transcript of Ms. Price's police statement.[9] Further, an objection by counsel for the Appellant was initially sustained, and that line of questioning was abandoned by the State. It was counsel for the Appellant who thereafter resurrected that issue by requesting further explanation by Ms. Price.

In *State v. Crabtree*, 198 W.Va. 620, 482 S.E.2d 605 (1996), this Court addressed hearsay evidence inadvertently introduced during testimony. The defendant had argued that the trial court erred in admitting the testimony of one individual regarding another individual's corroborating statement to a third

---

9. "Where it becomes relevant to show that a certain statement or declaration was made, regardless of the truth or falsity of the statement or declaration itself, such proof is not hearsay and should be admitted. It is evidence of what, in some of the books, is termed a 'verbal fact.'" Syl. Pt. 4, *State v. Corbin*, 117 W.Va. 241, 186 S.E. 179 (1936).

individual regarding the time of the defendant's arrival at a home on the night of the alleged crime. 198 W.Va. at 626, 482 S.E.2d at 611. This Court explained:

> While the defendant is correct in his assertion that neither Rule 805 nor Rule 806 allows inadmissible hearsay within hearsay for impeachment purposes, *see State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995), we hold that in this instance the error was forfeited under the "invited error" doctrine. In other words, we find the hearsay evidence was either invited by or in response to questions by defense counsel. Where inadmissible evidence is introduced solely as a result of the rigorous examination of the complaining party, the error is deemed invited error. *State v. Hanson,* 181 W.Va. 353, 363, 382 S.E.2d 547, 557 (1989); *Fluharty v. Wimbush,* 172 W.Va. 134, 137, 304 S.E.2d 39, 42 (1983).

198 W.Va. at 626–27, 482 S.E.2d at 611–12.[10]

We find that any error in admitting the questionable portion of Ms. Price's testimony was invited by counsel for the Appellant's continued insistence upon eliciting an explanation from Ms. Price. When the State first raised a question likely to evoke an answer containing hearsay, counsel for the Appellant promptly objected, and such objection was sustained by the lower court. The inquiry could have ended there. Counsel for the Appellant sought further explanation, and more extensive damaging information was elicited.

Further, we find that any error in admitting the questionable testimony of Ms. Price was harmless in light of the voluminous evidence against the Appellant. In *Phillips,* this Court explained:

> When dealing with the wrongful admission of evidence, we have stated that the appropriate test for harmlessness is whether, after stripping the erroneous evidence from the whole, we can say with fair assurance that the remaining evidence independently was sufficient to support the verdict and the jury was not substantially swayed by error. *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

194 W.Va. at 585–86, 461 S.E.2d at 91–92.

We further find no abuse of discretion in the lower court's decision to deny the Appellant's request for a mistrial over the issue of Ms. Price's testimony. In *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983), this Court explained as follows:

> The decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court. *State v. Craft,* 131 W.Va. 195, 47 S.E.2d 681 (1948). A trial court is empowered to exercise this discretion only when there is a "manifest necessity" for discharging the jury before it has rendered its verdict. W.Va.Code § 62-3-7 (1977 Replacement Vol.). This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy. *See State ex rel. Brooks v. Worrell,* 156 W.Va. 8, 190 S.E.2d 474 (1972); *State ex rel. Dandy v. Thompson,* 148 W.Va. 263, 134 S.E.2d 730, *cert. denied,* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964); *State v. Little,* 120 W.Va. 213, 197 S.E. 626 (1938).

172 W.Va. at 304, 305 S.E.2d at 260. We find no abuse of discretion in the lower court's decision that manifest necessity did not exist in the present case, and the failure to grant a mistrial was not error.

Having thoroughly reviewed arguments of counsel, briefs, the record, applicable rules,

---

10. We recognize that deviation from this doctrine is permissible where application of the rule would result in manifest injustice. The Fourth Circuit Court of Appeals explained this possible deviation in *Wilson v. Lindler,* 995 F.2d 1256 (4th Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1101, 127 L.Ed.2d 414 (1994), stating that a conviction should be reversed despite invited error where exceptional circumstances exist. "To demonstrate exceptional circumstances, the party inviting the error must demonstrate that reversal 'is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice.' " 995 F.2d at 1262 (citations omitted). We do not find that exceptional circumstances exist in the present case.

and applicable precedent, we affirm the lower court in all respects.

Affirmed.