# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael Todd Cox,**
**Petitioner Below, Petitioner**

**FILED**

April 25, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0770** (Jefferson County 12-C-313)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Michael Todd Cox, by counsel S. Andrew Arnold, appeals the July 2, 2013, order of the Circuit Court of Jefferson County dismissing his petition for a writ of habeas corpus. Respondent Warden, by counsel Brandon C.H. Sims, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 6, 2007, Kathy W. left petitioner alone with her two-month-old and fourteen-month-old children while she went grocery shopping.[1] When she returned almost two hours later, petitioner had both children dressed and ready to leave the house. Petitioner told Kathy W. that he needed to return to his father's house in Maryland to assist with a Moose Lodge event. Kathy W. drove petitioner to Maryland and returned home with both of her children in the car. Kathy W.'s grandmother arrived home around the same time as Kathy W. and her children. Kathy W. left with the older child, leaving two-month-old C.J. with her grandmother for several hours. When she returned home, Kathy W. called 911 around 6:30 p.m. to report that C.J. was in distress.[2]

---

[1]Due to the sensitive facts involved in this case, we refer to the victims and the victims' family members by their last initials. *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]According to Kathy W.'s grandmother, during the approximately three-hour period that she watched C.J. alone, his arms were stiff, his hands were balled into fists, he was making strange arm movements, and one of his eyelids was drooping. Kathy W.'s grandmother called Kathy W.'s mother three times that afternoon due to her concerns about C.J. It was approximately forty minutes later that Kathy W. returned and called 911.

C.J. was transported to Jefferson Memorial Hospital and later flown to Georgetown University Hospital in Washington, D.C. On December 10, 2007, life support was removed and C.J. died as a result of his injuries, including a head injury.

During the trial, the medical examiner for the Washington, D.C., area testified that young infants' cranial bones are not fused into a solid skull, so the infant's brain has more room to swell, prolonging the onset of any symptoms of brain injury, an onset which in this case would have been three to four hours after the injury. Petitioner was convicted by a jury of child abuse by a custodian causing the death of a child, in violation of West Virginia Code § 61-8D-2a, on March 25, 2009, in case number 08-F-65. Following the conviction, the State filed a recidivist information in case number 09-F-50, alleging that petitioner had at least two prior qualifying convictions and that his sentence in 08-F-65 should be enhanced to life in prison with the possibility of parole. On June 1, 2009, at a pre-trial hearing in 09-F-50, petitioner admitted being the same person who was previously convicted of manslaughter; burglary in the fourth degree (breaking and entering a dwelling); and assault and battery. At a June 8, 2009 hearing, regarding post-trial motions and sentencing in 08-F-65, the circuit court denied petitioner's post-trial motions and sentenced petitioner to a determinative sentence of forty years for case number 08-F-65. Pursuant to West Virginia Code § 61-11-18, the circuit court then enhanced petitioner's penalty to life imprisonment based upon his admissions to the information filed in 09-F-50. Petitioner filed a petition for appeal with this Court on December 8, 2009, seeking reversal of his conviction. The petition for appeal set forth nine alleged errors, including that the "trial court erred by permitting the state to offer into evidence in its case-in-chief at trial the petitioner's 1993 conviction for manslaughter [and] . . . the trial court erred by instructing the jury as to flight." That petition was refused on March 4, 2010.

On August 13, 2012, petitioner filed his petition for writ of habeas corpus before the circuit court. In his petition, petitioner set forth three grounds of error: 1) that he was denied due process of law during his trial on the basis that the circuit court admitted Rule 404(b) evidence of prior bad acts, namely his 1993 conviction for manslaughter in Maryland; 2) that he had ineffective assistance of counsel at trial; and 3) that he was denied a fair trial based upon the admission of flight evidence and subsequent instruction to the jury on flight evidence. Respondent filed a response, and the circuit court held an evidentiary hearing on February 1, 2013.

The circuit court entered its order denying writ of habeas corpus ad subjicideum on July 2, 2013. In that order, the circuit court found that the evidence admitted pursuant to Rule 404(b) was not too remote in time to be admitted; the prior acts evidence showed that both C.J. and the child involved in petitioner's 1993 conviction suffered skull fractures as a result of blunt force trauma while in the presence of petitioner, and that after receiving those skull fractures, both infants died following ICU hospitalizations; and the location of the blunt force trauma injury on the left side of each child's skull with the resultant subdural hematoma and hemorrhaging showed petitioner's mode of operation, in that it could be inferred that he struck each child's head with his right hand as he faced the infants, thereby demonstrating his modus operandi and that he was the perpetrator of the injuries to each child. The circuit court also found that petitioner's trial counsel objected to reading only a portion of documents admitted pursuant to Rule 404(b) and, instead, requested that the entirety of the documents be read into the record. Therefore, following the pre-trial hearing in March of 2009, the circuit court ruled that the proposed 404(b) evidence was admissible and

2

relevant. The circuit court also found that there was no merit to petitioner's contentions regarding the ineffective assistance of counsel. Finally, the circuit court addressed petitioner's contention that he was denied a fair trial based upon the admission of flight evidence and counsel's failure to request an in camera hearing on the matter. The circuit court concluded that evidence of petitioner's departure from the jurisdiction was presented to the jury by both parties and the instructions given by the court directed the jury to determine the reason petitioner left the state: either to flee or to fulfill a long-standing commitment. It further found that petitioner's argument ignores the fact that petitioner introduced evidence that he left the jurisdiction in an effort to prove that he did not have access to the child at the time the defense expert testified C.J.'s injuries must have occurred. The circuit court denied the petition, and petitioner appeals that denial to this Court.

We review a circuit court's dismissal of a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

In his appeal, petitioner asserts three assignments of error. As set forth herein, we find that the circuit court did not abuse its discretion in dismissing petitioner's petition for habeas corpus.

Petitioner first argues that the circuit court erred in denying his petition for habeas corpus relief because his constitutional rights to due process and a fair trial were violated when the State relied so heavily on petitioner's prior conviction for manslaughter to create its theory of the case. The evidence complained of by petitioner is evidence the circuit court admitted pursuant to Rule 404(b) of the West Virginia Rules of Evidence. Petitioner argues that despite the circuit court's limiting instruction to the jury, the members of the jury were unduly influenced by the fact that petitioner had previously been convicted of manslaughter of an infant.[3] He further argues that the nature of the allegation against petitioner related to C.J., coupled with the evidence of petitioner's prior manslaughter conviction, unduly prejudiced petitioner and denied him a fair trial. Petitioner contends that the State used a sixteen-year-old conviction to establish its theory of the case, which is an impermissible use of Rule 404(b) evidence. "Before admitting the evidence, the trial court should conduct an *in camera* hearing . . . . If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted." Syl. Pt. 2, in part, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

---

[3]In its instruction, the circuit court stated as follows: "This prior conviction may be considered relevant only for the purposes of determining whether it demonstrates a modus operandi or a pattern of criminal behavior so distinct if you feel it does so demonstrate that it might be considered as evidence that the conduct alleges in this case may be attributed to the same person. You may not use this prior conviction evidence standing alone as conclusive proof whether the State has established the crime of child abuse resulting in death as charged in this case. . . ."

The State noticed its intent to present 404(b) evidence on August 25, 2008. On March 9 and 10, 2009, the circuit court held a *McGinnis* hearing, and following the testimony of the medical examiner, the court ruled that the proposed 404(b) evidence was admissible.

> Whether evidence offered is too remote to be admissible upon the trial of a case is for the trial court to decide in the exercise of a sound discretion; and its action in excluding or admitting the evidence will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.

Syl. Pt. 6, *State v. Winebarger*, 217 W.Va. 117, 617 S.E.2d 467 (2005) (quoting Syl. Pt. 5, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945)). In this case, it is clear that the circuit court held the necessary hearing, concluded that the evidence was admissible, and gave a limiting instruction at least three times. Petitioner previously admitted causing the injuries to the child that resulted in his 1993 conviction. The injuries and circumstances of the two incidents are so similar that upon our review of the record, we find that the circuit court's admission of such evidence was not an abuse of discretion.

Petitioner's second assignment of error is the allegation that he did not receive effective assistance of counsel. In support of his contention, petitioner points to his trial counsel's failure to provide his expert with records. On November 7, 2008, trial counsel moved for and was granted the approval of the circuit court to employ Dr. Faris Bandak, Ph.D., as an expert in injury causation and mechanisms. Trial counsel sent two loose-leaf binders containing records to Dr. Bandak on November 21, 2008, along with a retainer. Petitioner asserts that trial counsel never called Dr. Bandak to testify at trial due to counsel's inability to secure the original MRI records from either Jefferson Memorial or Georgetown Hospital. He claims that Dr. Bandak's expert testimony would have provided a scientific alternative to the State's theory of the case. Petitioner also asserts that trial counsel's failure to request an in camera hearing regarding the proposed flight evidence denied petitioner his constitutional right to effective assistance of counsel at trial.

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim. *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 321, 465 S.E.2d 416, 423 (1995). Based on our review of the record, we find that petitioner has not met his burden of proof under the *Strickland/Miller* test, as he failed to show that counsel's performance was deficient under an objective standard of reasonableness or that there was a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.

4

Trial counsel properly retained the services of an expert witness to testify regarding the causation of C.J.'s injuries and the onset of symptoms related to those injuries. Trial counsel presented the testimony of another expert, Dr. Bernstein, who testified as to causation of both infants' injuries, including the mechanism of injury. Dr. Bernstein testified that there was blunt force trauma but that he did not believe the autopsy findings rule out the possibility that the child may have sustained some of its injuries from shaking, as well. He went on to suggest that there was a shaking injury, in addition to the blunt force trauma. He testified that it was more likely than not that the child was stationary when the blow to the skull occurred.

C.J.'s medical records were in the possession of the medical facilities from which they were generated. Trial counsel explained that he asked for the documents approximately eight months prior to trial but that the State did not have them in its file. It is clear that counsel's performance in securing Dr. Bernstein, but failing to present Dr. Bandak, was objectively reasonable. It is also clear from the record that trial counsel made strategic decisions, of which petitioner now complains. Specifically, petitioner's trial counsel introduced evidence of petitioner traveling to Maryland on the day of C.J.'s injuries as part of its theory of defense. Thus, there was no need to request an in camera hearing regarding petitioner's absence from the area. For the reasons set forth herein, we find no error in the circuit court's finding that the allegation of ineffective assistance of counsel is without merit.

Petitioner's final assignment of error is that the circuit court erred when it denied petitioner's habeas claim regarding the flight instruction given to the jury because no evidence of flight existed in the record. Petitioner is critical of the circuit court's finding that trial counsel made a strategic choice to demonstrate that petitioner was not present during the relevant timeframe. He contends that the circuit court's improper granting of the flight instruction had the effect of lending credibility to the State's argument that evidence of flight existed. He complains about the lack of an in camera hearing on the issue and claims that he was not afforded the opportunity to introduce evidence contradicting the State's argument that evidence of flight existed. We have previously recognized that evidence of a defendant's flight is admissible when its probative value outweighs its prejudicial effect. *See* Syl. Pt. 6, *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981). Further,

> [t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. Pt. 6, *Tennant v. Marion Health Care Foundation, Inc.,* 194 W. Va. 97, 459 S.E.2d 374 (1995).

First, we note that while an in camera hearing was not requested or conducted in the instant case, the matter was argued at the pre-trial hearing. The evidence of petitioner's travel to Maryland was a key argument in petitioner's defense, as he claimed that C.J.'s injuries occurred while he was in Maryland, while C.J. was in the physical custody and control of others. Petitioner's father testified that his son had helped butcher meat for the Moose Lodge event for most of the last six to

5

seven years, but he did not testify specifically that petitioner had a pre-arranged obligation to butcher on the date in question. The circuit court made the necessary determination and allowed the jury to ascertain the reason for petitioner's absence from the state. The circuit court also gave the proper limiting instruction. For the reasons set forth herein, based upon our review of the record, we find that the circuit court did not abuse its discretion in giving a flight instruction. Therefore, we also find that the circuit court did not err in denying petitioner habeas relief on this ground.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Jefferson County and affirm the circuit court's July 2, 2013, order dismissing the petition for a writ of habeas corpus.

Affirmed.

**ISSUED**: April 25, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

It was error to allow evidence of the defendant's manslaughter conviction that occurred sixteen years before the victim's death. This old manslaughter conviction was allowed under Rule 404(b) because it demonstrated a modus operandi or pattern of behavior. My review of the evidence reveals the prosecutor relied heavily on the manslaughter conviction to prove bad character and guilt rather than modus operandi or a pattern of conduct.

I firmly believe that the manslaughter conviction was too remote to be admissible under Rule 404(b). *See State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).