IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-546

_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

RIDA SHAHID HENDERSHOT,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Berkeley County
Honorable Laura Faircloth, Judge
Circuit Court No. CC-02-2022-F-31

AFFIRMED

_____

Submitted: March 31, 2026
Filed: June 2, 2026

FILED

June 2, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jonathan T. O'Dell, Esq.
Assistant Public Defender
Public Defender Corp.
23rd Circuit
Martinsburg, West Virginia
Counsel for Petitioner

John McCuskey, Esq.
Attorney General
Andrea Nease, Esq.
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 1, *State v. Mason*, 251 W. Va. 805, 916 S.E.2d 647 (2025).

2. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

3. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

4.      "'As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility.' Syl. Pt. 6, *State v. Gwinn,* 169 W.Va. 456, 288 S.E.2d 533 (1982)." Syl. Pt. 9, *State v. McIntosh*, 207 W. Va. 561, 566, 534 S.E.2d 757, 762 (2000).

5.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt."  Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

ii

WOOTON, Justice:

Petitioner Rida Shahid Hendershot ("the petitioner") appeals from her conviction by a Berkeley County, West Virginia, jury of second-degree murder and felony use of a firearm during the commission of a felony, for which she was sentenced to consecutive forty- and ten-year terms of imprisonment. The petitioner raises three assignments of error: that the circuit court erred or abused its discretion in admitting evidence of other acts, either as acts which were intrinsic to the crimes charged or as crimes, wrongs, or other acts under Rule 404(b) of the West Virginia Rules of Evidence; that the court erred or abused its discretion in admitting the testimony of an expert who discussed typical behaviors of domestic violence victims and typical patterns of domestic violence leading to lethal outcomes; and that the court erred or abused its discretion by denying the petitioner's post-trial motions for judgment of acquittal or for a new trial, which were based upon the petitioner's claim that the evidence was insufficient to support the jury's verdicts.

Having carefully reviewed the parties' briefs and oral arguments, the appendix record, and the applicable law, we affirm.

## I. Facts and Procedural Background

1

On May 25, 2021, law enforcement was dispatched to the home of Matt Hendershot ("the victim"), the petitioner's ex-husband, after a neighbor reported a shooting. The victim was dead at the scene. The petitioner, who was waiting at the home when police arrived, stated that she had accidentally and unintentionally shot the victim while the two were moving various firearms into his bedroom.

Police initially accepted the petitioner's version of events and charged her with recklessly using a firearm. However, following forensic testing of the gun used to kill the victim, an Ed Brown 1911 gun which belonged to the petitioner,[1] police concluded that the gun's safety features made it highly unlikely that it could have gone off accidentally, as the petitioner claimed. As a result, the petitioner was indicted on February 16, 2022, on one count of first-degree murder and one count of use of a firearm during the commission of a felony.

Evidence adduced at trial established that the petitioner had moved into the victim's home in or about late April or early May 2020, after the death of her then-fiancé with whom she had been living. Although the petitioner and the victim did not have a

---

[1] At trial the victim's sisters, Gloria Hendershot and Jasmine Reese, testified that the petitioner's Facebook and Instagram accounts were replete with pictures of guns and pictures of her shooting guns, along with commentary by the petitioner that she was "missing the shooting range" and "[y]ou can never have enough guns" and "[s]ay [h]ello to my Ed Brown," which had apparently been given to her as a Valentine's Day gift because "[s]ome girls want flowers and chocolates. Keepers want guns and ammo."

particularly good relationship after their divorce, the victim agreed to provide temporary housing for the petitioner and her pets while she found a place to live and secured employment. However, evidence established that the victim looked upon this "temporary" arrangement as one that would last a week or two, while the petitioner was reluctant to leave because the arrangement provided her with free room and board – for her pets as well as for her – without any responsibility for paying bills. As almost a year elapsed, the victim continued to set deadlines for the petitioner's departure, all of which passed by as the petitioner made a plethora of excuses for not leaving. The relationship between the two, which was frosty to begin with, grew very acrimonious, as demonstrated by a series of text messages between the victim and the petitioner, the victim and the petitioner's brother, and the victim and his friends.

In pre-trial proceedings, the State filed notices of intent to offer intrinsic evidence or, in the alternative, other acts evidence under Rule 404(b), with respect to five incidents: on at least one occasion, and possibly more, the petitioner pointed an AR-15 assault rifle at the victim's head; during the year preceding the victim's death the petitioner damaged or destroyed three of his doors during fits of rage; several months before the victim's death the petitioner waived a machete toward him in a threatening manner; in or about August 2020 the petitioner struck the victim several times and attempted to stab him in the eye with a fork, although the thrust of the fork was deflected by the victim and it hit him in the shoulder; and in late 2011 or early 2012, the petitioner stabbed a former

3

boyfriend with a screwdriver. The State claimed that all of these incidents were intrinsic evidence demonstrating "escalating domestic violence by the [petitioner] toward the victim that resulted in his murder" or, in the alternative, that the incidents were all admissible under Rule 404(b) to prove motive, lack of accident, or absence of mistake. Following evidentiary hearings and argument, the circuit court reserved ruling on the "doors incident," found that the "screwdriver incident" was admissible under Rule 404(b), and found that the "AR-15 incident," the "machete incident," and the "fork incident" were admissible both as intrinsic evidence and as Rule 404(b) evidence.[2] Subsequently, after hearing the testimony of the State's expert domestic violence witness, *see infra*, the court also found the "doors incident" to be admissible both as intrinsic evidence and as Rule 404(b) evidence.

The petitioner's trial began on February 7, 2023. The petitioner did not contest the fact that she had shot and killed the victim; rather, the issue was whether the shooting was a premeditated, malicious, and intentional act, as the State alleged, or a "tragic accident," as the petitioner alleged. In its case in chief, the State called witnesses to establish four overarching propositions.

---

[2] The evidence at trial as to these incidents is discussed in detail *infra*.

First, the State called witnesses to establish that the petitioner gave multiple accounts to law enforcement as to how, where, and under what circumstances the shooting had occurred. She described various, conflicting, scenarios intended to support her claim that the shooting was an accident, ranging from 'I didn't even realize that the gun had gone off until the victim ran outside holding his neck' to 'I had no idea the gun was loaded' to 'the gun just somehow went off' to 'I never pulled the trigger' to 'I pulled the trigger without meaning to.'

Second, the State established both through the petitioner's social media posts and witness testimony that the murder weapon belonged to her and that she was familiar with firearms generally and the Ed Brown 1911 in particular. *See supra* note 1. Expert testimony established that the gun in question had two manual safeties, a grip safety and a thumb safety, meaning that the shooter had to manually manipulate the safeties to disengage them, as well as two passive safeties, a disconnect safety and a half-cock notch on the hammer, which will catch the hammer and not allow it to hit the firing pin. Calissa Carper, Section Supervisor of the Firearm and Toolmark Section of the West Virginia State Police Forensic Laboratory, was qualified as an expert and testified as to her multiple unsuccessful attempts to create a condition where the Ed Brown 1911 would discharge accidentally. She stated that the gun could not be fired unless the manual safeties were disengaged, the hammer was fully cocked, and the trigger was pulled with at least four and

one-quarter pounds of pressure, concluding that "[b]ased on all my laboratory testing, [the gun] will not accidentally discharge[.]"

Third, the State utilized text messages from the victim to the defendant and various friends, as well as eyewitness testimony in the case of the "screwdriver incident" and the "machete incident," to establish that the petitioner and the victim were locked in an abusive relationship – a relationship replete with the petitioner's verbal and physical threats and taunts, her physical threats of violence with firearms and a machete, her destruction of the victim's property, and actual violence perpetrated by her on the victim, including punches and stabbing. The evidence showed that the victim never reported the petitioner's abuse to authorities, although on several occasions he expressed an intention to do so, and that within a few days of his death he was actually contemplating moving out of his home in order to get away from the petitioner. Deputy A.J. Weidman testified as to text messages which had been retrieved by law enforcement from the victim's phone and the petitioner's phones. The victim sent messages to the petitioner in which he recounted that "You came at me and hit me in the damn face twice and knocked me off the couch"; "you tried to stab me with a fork like you did [a prior boyfriend] way back"; and "You actually crippled me on my shoulder with the fork, it's scabbing up." Additionally, the victim sent messages to the petitioner's brother asking for help to "[g]et your psycho sister of my house. Please. Somehow[,]" and recounting that the petitioner "aims guns at me drunk and has bashed in 3 of my doors[.]" Further, the victim's friend Ronald Savage

6

testified that because of the tension and animosity in the victim's home resulting from the petitioner's abusive actions toward the victim, some of which actions he witnessed personally and some of which were contained in the victim's text messages to Mr. Savage – the petitioner, while drunk, pointed an AR-15 at the victim's head, and on another occasion attempted to stab him in the eye with a fork, managing to land the fork in his arm – he considered the victim to be living in a dangerous situation. He described how the petitioner would try to upset the victim on multiple occasions when he was otherwise occupied, including on the occasion of the "machete incident," where the petitioner was "yelling and screaming and had brandished [the machete]" at the victim as he and Mr. Savage were engaged in a competitive interactive game of beer pong. Mr. Savage testified that he was so unnerved by the incident that he left the house and never returned; "I felt uncomfortable with what I saw, and I felt scared for him and for me, and I wasn't going back over there." Melissa Koch, another close friend of the victim, testified that when the victim recounted to her the petitioner's abusive acts, and most particularly an incident where she had pointed an AR-15 at him, Ms. Koch was frightened for his safety and advised him to leave his home. She also advised the victim to have the police escort the petitioner out of the home and to file for a restraining order – advice which the petitioner, regrettably, did not follow. Finally, the victim's father, Brian Matthew Hendershot, Senior, testified that the victim was so distraught over his living situation that he was planning to move to get away from the petitioner.

Additionally, the State called Cody Funkhouser, the petitioner's ex-boyfriend, who testified that during their relationship which lasted from 2009 to 2012, the petitioner was violent with him. He described an incident which occurred in late 2011 or early 2012 in which the petitioner picked up a screwdriver during an argument and stabbed him in the arm with it. The relationship ended not long thereafter, although the two remained on friendly terms.

Fourth, the State called Katie Spriggs, Executive Director of the Eastern Panhandle Empowerment Center, which provides crisis management services and shelter for victims of domestic violence, sexual assault, stalking, and human trafficking. She testified as an expert on the dynamics of domestic violence, and more specifically the "power and control" dynamic between abuser and victim, as evidenced by an abuser's destruction of property, intimidation, threats of violence, and actual violence. Ms. Spriggs noted that domestic violence is a significantly underreported crime, and that male victims report at an even lower rate than female victims. She further testified as to how a sustained, escalating pattern of domestic violence heightens the risk of a lethal outcome, particularly in a situation where the abuser senses that he or she is losing, or may lose, the power and control that fuel the domestic violence dynamic.[3]

---

[3] Ms. Spriggs did not testify as to how, if at all, the dynamic between the victim and the petitioner in this case was consistent with recognized patterns of domestic violence; indeed, she expressed no opinion as to whether the petitioner was an abuser or whether Mr. Hendershot was a domestic violence victim.

On the fourth day of trial the State rested; the defense also rested, and the case went to the jury on instructions that are not at issue on appeal. Following deliberations, the jury returned a verdict of guilty on the charge of second-degree murder and guilty on the charge of use of a firearm in the commission of a felony. The circuit court sentenced the petitioner to terms of imprisonment of forty years and ten years, respectively, and set the terms to run consecutively. This appeal followed.

## II.     Standard of Review

It is well established in this Court's jurisprudence that "'[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 1, *State v. Mason*, 251 W. Va. 805, 916 S.E.2d 647 (2025); *see also* Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

With respect to the petitioner's claim that the circuit court erred in denying her motions for judgment of acquittal and for a new trial on the ground that the evidence was insufficient to prove guilt beyond a reasonable doubt, we have held that

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.
>
> Syl. Pt. 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000). Furthermore, "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla,* 227 W.Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock,* 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)).

*State v. Jenner*, 236 W. Va. 406, 413, 780 S.E.2d 762, 769 (2015).

Employing these standards to guide us, we turn to the petitioner's assignments of error.

## III. Discussion

In her first assignment of error, the petitioner contends that the circuit court erred in admitting into evidence text messages retrieved from the victim's phone

concerning the AR-15 incident, the broken doors incident, and the fork incident,[4] as well as eyewitness testimony concerning the machete incident and the screwdriver incident. She argues that the victim's text messages concerning the AR-15 incident and the broken doors incident were inadmissible hearsay because there was no corroborating evidence to establish the trustworthiness of the victim's statements; that none of the incidents were intrinsic to the crimes charged; and that none of the incidents were otherwise admissible under Rule 404(b) of the West Virginia Rules of Evidence.

We begin by examining whether the circuit court abused its discretion in determining that evidence of the AR-15 incident and the doors incident, which consisted solely of text messages sent by the victim to others, was admissible over a hearsay objection. The court held that the evidence was not hearsay because it was a "statement of an opposing party that was a present sense-type of comment and evidenced a state of mind, state of mental being at the time";[5] and alternatively, that if the evidence was hearsay, it

---

[4] We note that during pre-trial and trial proceedings the petitioner challenged whether these text messages were properly authenticated; however, she has not raised authentication as an assignment of error.

[5] West Virginia Rule of Evidence 801(d)(2)(A) provides in relevant part:

> (d) *Statements that are not hearsay.* – A statement that meets the following conditions is not hearsay:
>
> * * *
> (2) *An opposing party's statement.* – The statement is offered against an opposing party and

was nevertheless admissible as "an exception under the overall catchall exceptions to the rules of evidence and does tend to establish an existing state of mind and it is trustworthy[.]"

At the outset, we disagree with the circuit court's conclusion that the text messages were not hearsay because they were statements of an opposing party under Rule 801(d)(2), because the declarant, Matt Hendershot, was the *victim*, not a *party*. *See State v. Ervin*, 238 W. Va. 77, 84–85, 792 S.E.2d 309, 316–17 (2016) ("the petitioner argues in this appeal that Ms. Layman's statement to Ms. McCartney should have been admitted into evidence by the trial court as a party admission pursuant to Rule 801(d)(2) of the West Virginia Rules of Evidence. However, Ms. Layman is not a party in this case; she is the victim. The parties in this case are the petitioner and the State of West Virginia. Accordingly, the statement is not a party admission.") Thus, we must determine whether the text messages were properly admitted under the rules of evidence governing exceptions to the general rule against hearsay, specifically: Rule 803(1), present sense impression;[6]

---

> (A) was made by the party in an individual or representative capacity[.]

[6] West Virginia Rule of Evidence 803(1) provides that a hearsay statement is not excluded from evidence if it demonstrates a present sense impression, defined as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."

12

Rule 803(3), then-existing mental, emotional, or physical condition;[7] and/or Rule 807,

designated as the residual, or catchall, exception.[8] The circuit court found that the text

messages concerning the AR-15 incident and the doors incident were admissible under all

three exceptions, *see supra*, although with scant supporting analysis – an omission that is

not fatal where, as here, the evidence of record amply supports the court's conclusion that

the messages were admissible pursuant to the residual exception.[9]

---

[7] West Virginia Rule of Evidence 803(3) provides that a hearsay statement is not excluded from evidence if it demonstrates a then-existing mental, emotional, or physical condition, defined in relevant part as "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)[.]"

[8] West Virginia Rule of Evidence 807 provides that

> (a) *In general.* – Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804;
> (b) the statement has equivalent circumstantial guarantees of trustworthiness;
> (c) it is offered as evidence of a material fact;
> (d) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (e) admitting it will best serve the purposes of these rules and the interests of justice.

Additionally, we have held that for a statement to be admissible under Rule 807, "adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence." Syl. Pt. 5, in part, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987). Here, the petitioner does not contend that adequate notice was not afforded her.

[9] *See In re B.M.*, Nos. 19-1044 & 19-1140, 2020 WL 3469725, at *5 (W. Va. June 25, 2020) (memorandum opinion) ("While the circuit court's adjudicatory order does not include detailed findings of fact regarding the admissibility of the CAC interviews, as

Our review of that evidence demonstrates that all four requirements for admission of evidence pursuant to Rule 807 were met by the State: (1) the totality of the evidence at trial, which was sufficient for the jury to conclude that the petitioner had a long history of domestic abuse and over-the-top behavior, especially when drunk, supported a finding that the victim's statements in the messages were trustworthy; (2) the messages were offered as evidence of a material fact, the petitioner's ongoing abuse of the victim and her seemingly explosive temper; (3) the messages were probative of a critical issue, the relationship between the petitioner and the victim, and were the best evidence the State had available through reasonable efforts since the victim was dead and had never reported the petitioner's abuse to authorities;[10] and (4) admission of the evidence served the interests of justice by allowing the jury to base its decision on a full presentation of relevant evidence. Therefore, we conclude that the circuit court did not abuse its discretion in admitting evidence of the AR-15 incident and the doors incident pursuant to Rule 807 of the West Virginia Rules of Evidence.[11]

---

discussed above, the record supports their admission."). Notwithstanding our fact-specific holding in this case, we urge circuit courts to explain on the record the factual and legal bases for their rulings on issues involving the admission of, or refusal to admit, hearsay evidence.

[10] In this regard, it will be recalled that the evidence of Ms. Spriggs suggested that most male victims of domestic abuse never report it to authorities or otherwise ask for help.

[11] As noted *supra*, the circuit court also concluded that the AR-15 incident and the doors incident were admissible under Rule 803(1) because the victim's text messages described events within his personal knowledge: the petitioner pointing a gun at the victim's head while drunk and angry, and her deliberate destruction of his property. The court also concluded that the incidents were admissible under Rule 803(3) because the

14

We turn now to the circuit court's rulings that the AR-15 incident, the doors incident, and the fork incident, although hearsay, were admissible as intrinsic evidence, that the machete incident was also admissible as intrinsic evidence, and that all of the incidents, including the screwdriver incident, were admissible as Rule 404(b) evidence for the purpose of showing motive, lack of accident, and/or absence of mistake. The petitioner contends that none of the incidents were admissible either as intrinsic evidence or as Rule 404(b) evidence; that none of the incidents were relevant; and that even if relevant, the probative value of the evidence was "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

West Virginia Rule 404(b) provides:

    (b)    *Crimes, wrongs, or other acts.*

---

victim's text messages evidenced his then-existing mental, emotional, or physical condition resulting from the petitioner's abusive behavior. However, the court made no findings as to the temporal relationship between the victim's text messages and the incidents described therein, and neither party has cited to relevant record evidence which would settle the matter. It is well settled in this Court's precedents that admission of hearsay evidence under either the 803(1) or the 803(3) exceptions to the rule against hearsay requires a showing that the hearsay statement was made at or near the time of the event described. *See, e.g.*, *State v. Rollins*, 233 W. Va. 715, 735, 760 S.E.2d 529, 549 (2014) (rejecting admission of hearsay evidence concerning domestic violence under Rule 803(1) because"[n]o testimony was presented at the *in camera* hearing indicating that Ms. Rollins's assertions of domestic violence were made contemporaneously with the bruising so as to preclude the reflection that gives rise to falsehood."). Thus, we decline to address these issues.

(1) *Prohibited uses*. – Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted uses; notice required*. – This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:

(A) provide reasonable notice of the general nature and the specific and precise purposes for which the evidence is being offered by the party at trial, and

(B) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice.

We preface our analysis of the rule, and its application to the facts of this case, with the long-established judicial roadmap set forth in *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996):

[i]n determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990): " 'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged."

196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29; *see also State v. Mason*, 251 W. Va. 805, 814, 916 S.E.2d 647, 657 (2025) (finding that evidence was intrinsic in that prior events and relationships were "the catalyst for all of the events underlying the charged crime.") (citations omitted); *State v. Vincent*, No. 21-0656, 2022 WL 17444782, at *2 (W. Va. Dec.

16

6, 2022) (memorandum opinion) (finding that evidence of petitioner's affiliation with Pagans motorcycle club was appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae.'"); *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) ("Intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.") (citing Thomas M. DiBiagio, *Intrinsic and Extrinsic Evidence in Federal Criminal Trials: Is the Admission of Collateral Other–Crimes Evidence Disconnected to the Fundamental Right to a Fair Trial,* 47 Syracuse L. Rev. 1229, 1231 (1997)).

In accordance with these precedents, we begin by examining whether the circuit court abused its discretion in determining that the AR-15 incident, the doors incident, the fork incident, and the machete incident were intrinsic to the crime charged and thus admissible in evidence without the necessity of a Rule 404(b) analysis.[12] See *State*

---

[12] Although the petitioner makes a conclusory allegation that the circuit court failed to determine that the incidents in question actually occurred, she does not otherwise challenge the procedures followed by the circuit court in making its evidentiary rulings as to the admissibility of other acts evidence. *See* Syl. Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994). In *McGinnis*, this Court established a procedure to be followed in determining whether evidence is admissible pursuant to Rule 404(b):

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the

*v. Paglia*, __ W. Va. __, __, __ S.E.2d __, __, 2026 WL 1194679, at \*4 (2026) (citations omitted)) ("this Court has often said that 'evidence which is "intrinsic" to the indicted charge is not governed by Rule 404(b)'. . . . Thus, before conducting any Rule 404(b) analysis, a court must first determine if the 'other bad acts' were intrinsic or extrinsic evidence.'")

In reviewing the totality of the evidence in this case, and in light of the State's theory that ongoing domestic violence led to a final, fatal, outcome, we easily conclude that the circuit court's determination was unassailable. The pattern of escalating acts of domestic violence perpetrated by the petitioner was inextricably intertwined with the lethal outcome of this abusive relationship – indeed, two of the incidents involved brandishing deadly weapons at the victim – and were necessary preliminaries thereto. *See LaRock*, 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29. Additionally, as Ms. Spriggs explained, a

---

acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

pattern of abusive language, threats, destruction of property, and violence is a known catalyst for a final, lethal, outcome. *See State v. Duke*, 246 W. Va. 336, 349, 873 S.E.2d 867, 880 (2022). Further, evidence of a pattern of domestic violence by the petitioner was necessary to show "context or background" for the shooting, and thus to "complete the story of the crime on trial[.]" *See Harris*, 230 W. Va. at 721, 742 S.E.2d at 137. In short, the jury was entitled to look at the "big picture" in determining the ultimate question in the case: assuming that the murder weapon *could* go off accidentally, as the petitioner claimed,[13] did the State nonetheless prove beyond a reasonable doubt that the petitioner intentionally and maliciously pulled the trigger, killing the victim before he could follow through with his plan to get away from the petitioner even if it meant leaving his home.

Having concluded that the AR-15 incident, the doors incident, the fork incident, and the machete incident were properly admitted as intrinsic evidence of the crimes charged, we need not address whether evidence of these incidents was also admissible under Rule 404(b). We note, however, that the petitioner's primary argument with respect to this issue, that the evidence was not relevant, is disingenuous at best, as the standard for determining relevance is low: evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* W. Va. R. Evid. 401. Further, "[e]ach piece

---

[13]As noted *supra*, unrebutted testimony at trial showed that the petitioner's account varied widely as to exactly how this alleged accident happened.

19

of evidence need not be conclusive: 'A brick is not a wall.'" *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) (citing 1 *McCormick on Evidence* § 185, at 776 (J. Strong ed., 4th ed. 1992). Here, the petitioner's relevance argument rests upon her continual assertion that domestic violence had nothing to do with whether the shooting was intentional or accidental. In making this argument, the petitioner simply ignores the fact that the State's theory of the case was that an escalating pattern of abusive behavior by the petitioner toward the victim led inexorably to lethal violence when it appeared that the victim was going to break the cycle of abuse by leaving his home. Thus, evidence of domestic violence was unquestionably relevant to the issue of whether the petitioner intentionally and maliciously shot the victim, or whether the shooting was indeed a tragic accident that coincidentally occurred at a time when it appeared the petitioner's turbulent relationship with the victim, a man who desperately wanted her out of a house in which she desperately wanted to stay, may have been about to end. *See, e.g., State v. Dennis*, 216 W. Va. 331, 352, 607 S.E.2d 437, 458 (2004). ("These [domestic violence] incidents were used to demonstrate Appellant's pattern of abusive and controlling behavior as a means of defining the turbulent nature of the relationship . . . . While the acts were not part of a 'single criminal episode' or 'necessary preliminaries' to the charged offenses, it is difficult to conclude that the evidence was not necessary 'to complete the story of the crimes on trial' or otherwise provide context to the crimes charged. This is especially true in light of the domestic violence overlay to the pattern of behavior.") (citing *LaRock*. 196 W.Va. at 312 n.29, 470 S.E.2d at 631 n.29)); *State v. Spinks*, 239 W. Va. 588, 605, 803 S.E.2d 558, 575 (2017) ("As the circuit court properly determined, in the six months leading up to her

death, Elizabeth's relationship with Petitioner was 'marked by a pattern of domestic violence, marital discord and threats of violence,' and the events on April 22, 2007, were 'illustrative of that relationship and not too remote in time to be intrinsic.' Because the State's theory of the case was that marital issues and domestic violence between Petitioner and Elizabeth provided his motive to kill her, the circuit court properly determined that testimony of Michelle and Catherine regarding the events on April 22, 2007 demonstrated the motive and setup of the crime and was "necessary to a full presentation of the case, ... [and] is appropriate in order 'to complete the story of the crime on trial[.]'") (citation and footnote omitted)); *State v. McKinley*, 234 W. Va. 143, 155, 764 S.E.2d 303, 315 (2014) (finding incidents of domestic violence perpetrated by defendant to be admissible because "[t]hese incidents were used to demonstrate [defendant's] pattern of abusive and controlling behavior as a means of defining the turbulent nature of the relationship the victim had with [her] after she attempted to break off the relationship with [defendant].").

The screwdriver incident, however, does require this Court to review the circuit court's Rule 404(b) analysis because that was the sole basis upon which the court admitted evidence of this incident. The petitioner contends that the court erred in admitting the evidence because it was irrelevant, because it occurred some ten years prior to the events giving rise to the charges against the petitioner, and because it involved a different victim, Cody Funkhouser. We disagree. The petitioner's argument that the incident was irrelevant is part and parcel of her all-encompassing assertion that domestic violence was

21

irrelevant to what she contends was the sole issue in the case: whether the shooting was malicious and intentional, or accidental. We have rejected this argument for the reasons discussed *supra* and reject it once again here. With respect to the petitioner's argument that evidence of the incident was inadmissible because the incident occurred a decade earlier and involved other victims, we have held that "'[a]s a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility.' Syl. Pt. 6, *State v. Gwinn*, 169 W. Va. 456, 288 S.E.2d 533 (1982)." Syl. Pt. 9, *State v. McIntosh*, 207 W. Va. 561, 566, 534 S.E.2d 757, 762 (2000); *see also State v. Winebarger*, 217 W. Va. 117, 617 S.E.2d 467 (2005) (affirming circuit court's admission of prior incidents of brandishing a weapon where those incidents occurred five to fifteen years earlier and involved other victims); *State v. Parsons*, 214 W. Va. 342, 589 S.E.2d 226 (2003) (affirming circuit court's admission of prior incidents of sexual assault and abuse where those incidents occurred ten to twenty years earlier and involved other victims). In this regard, we have held that

> It is presumed a defendant is protected from undue prejudice if the following requirements are met: (1) the prosecution offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave a limiting instruction."

*Winebarger*, 217 W. Va. at 120, 617 S.E.2d at 470. Syl. Pt. 7, in part. All of these requirements were met in the instant case.

This brings us to the petitioner's final argument applicable to all of the circuit court's evidentiary rulings: that the probative value of the evidence was substantially outweighed by its prejudicial impact. *See* W. Va. R. Evid. 403.[14] The circuit court specifically found that the probative value of the AR-15 incident, the doors incident, the fork incident, the machete incident, and the screwdriver incident outweighed any prejudice resulting to the petitioner from the admission of this evidence. We have recently made it clear that this Court is loathe to second-guess a circuit court's Rule 403 analysis and will do so only on the rarest of occasions.

> Because trial judges are much closer to the pulse of a trial than appellate judges can ever be, "'if judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.' *State v. Taylor*, 215 W. Va. 74, 86-87, 593 S.E.2d 645, 657-58 (2004) (Davis, J., dissenting) (quoting 2 *Weinstein's Federal Evidence* § 403.02[2][d] at 403-22 (2d ed. 2003) (footnote omitted)). "A reviewing court should defer to the ruling of the trial court on a Rule 403 issue, unless the ruling is an arbitrary or irrational exercise of discretion." 1 Palmer, *Handbook on Evidence for West Virginia Lawyers* § 403.04[5] at 307-08 (footnote omitted). "Only rarely, in extraordinary circumstances, will we from a vista of a cold appellate record reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *State v. Potter*, 197 W. Va. 734, 751, 478 S.E.2d 742, 759 (1996).

---

[14] West Virginia Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

*State v. Thompson*, __W. Va. __, __, 927 S.E.2d 885, 894 (2026). Here, a careful review of the voluminous record leads us to conclude that in this case, as in *Thompson*, there are no extraordinary circumstances presented that would cause us to interfere with the circuit court's Rule 403 balancing analysis. The evidence was relevant, *see supra*, and the court instructed the jury that the other acts evidence was offered for limited purposes and could not be the basis for finding that the petitioner was guilty of the crimes charged against her.

In her second assignment of error, the petitioner contends that the circuit court erred and abused its discretion in permitting the State's expert witness, Ms. Spriggs, to testify as to typical patterns of domestic abuse, how escalation of abuse may lead to a lethal outcome, and abuse victims' reluctance to report the abuse to authorities. Specifically, the petitioner claims that Ms. Spriggs' evidence was irrelevant; that it "improperly bolstered the State's witnesses' testimony and evidence, particularly the testimony and evidence of witnesses Funkhouser, Savage, and Koch"; and that it confused the jury regarding the elements of the crimes charged against the petitioner. Additionally, the petitioner claims that Ms. Spriggs should not have been qualified as an expert under Rule 702 of the West Virginia Rules of Evidence because "by the State's own admissions, [she] had no knowledge of the case."

We reject all of these arguments. We have already explained, at length, that the evidence of domestic violence perpetrated by the petitioner on her domestic partners

24

was relevant to prove motive, lack of accident, and/or absence of mistake, as the circuit court carefully instructed the jury.

With respect to the petitioner's claim of bolstering, we find that the petitioner's argument is misplaced. This Court has held that "[b]olstering occurs when a party seeks to enhance a witness's credibility before it has been attacked." *State v. Wood*, 194 W. Va. 525, 531, 460 S.E.2d 771, 777 (1995) (citation omitted)). In the instant case, the testimony of Ms. Spriggs had nothing to do with the credibility of Mr. Funkhouser, Mr. Savage, or Ms. Koch; rather, the testimony merely supplied a context in which to consider the factual evidence presented by these witnesses. Significantly, Ms. Spriggs did not express any opinion as to whether the abuse described by the witnesses actually occurred, whether the petitioner was an abuser, whether the victim suffered abuse at her hands, or whether abuse played any part in the leadup to the victim's death.

With respect to the petitioner's claim that the testimony of Ms. Spriggs confused the jury as to the elements of the crimes charged, we note that the circuit court's instructions to the jury correctly recited the elements of the crimes and that the petitioner does not take issue with any of the instructions. In short, the petitioner's claim of confusion is mere speculation – sound and fury, signifying nothing.

25

The petitioner's final claim, that Ms. Spriggs should not have been qualified as an expert witness under Rule 702, requires little discussion. The rule provides, in relevant part, that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *See* W. Va. R. Evid. 702(a). The testimony of Ms. Spriggs did exactly what the rule contemplates: the testimony assisted the trier of fact in understanding the evidence, by providing the jury with specialized knowledge concerning recognized patterns seen in domestic violence cases and commonly observed behaviors of perpetrators and victims. Nothing in the rule, and nothing in this Court's case law, requires an expert witness to have knowledge of the specific facts of the case being tried; to the contrary, it was within the province of the jury, not Ms. Spriggs, to determine whether the petitioner was a perpetrator of domestic abuse, whether Matt Hendershot was a victim of domestic abuse, and whether domestic abuse caused or contributed to the lethal outcome.

In her third and final assignment of error, the petitioner contends that the circuit court erred and abused its discretion by denying petitioner's motions for judgment of acquittal and/or for a new trial on the ground that the State's evidence was insufficient to prove guilt beyond a reasonable doubt. As this Court has observed,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or

circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995); *see also* Syl. Pt. 8, in part, *State v. Brock*, 235 W. Va. 394, 774 S.E.2d 60 (2015) ("[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.") (citation omitted).

We have reviewed the entirety of the trial transcript and conclude that the State's evidence and the inferences to be drawn therefrom, taken in a light most favorable to the prosecution, were more than sufficient to support the jury's verdict. The State's presentation was methodical: it established that the petitioner's story continually changed as to how the shooting occurred;[15] that her explanations to police were inconsistent with the medical evidence and with the physical evidence at the scene; that her insistence that she and the victim had a loving relationship was inconsistent with the observations of everyone who knew them, with the victim's text messages, and with the eyewitness

---

[15] The petitioner has never denied that she shot the victim.

27

testimony of Mr. Savage; that she was so determined to remain in the victim's house, over his strident objections, that it required legal action by the victim's mother to evict her even after the victim's death; that the petitioner was experienced with firearms and posted on social media about her prowess with them; that the petitioner shot the victim with her own gun, a weapon with which she was very familiar; that the gun had multiple safety features that had to be manually disengaged before it would could be discharged; that a firearms expert testified that the gun could only be fired after the safety features were disengaged, the gun fully cocked, and the trigger pulled with at least four and one-quarter pounds of pressure; and that even after multiple attempts, the expert was unable to accidentally discharge the firearm. Additionally, the State's other acts evidence, which established a pattern of domestic abuse and acts of violence on the part of the petitioner, was relevant to show that she had a motive to kill the victim, that she intentionally killed him before he could break the cycle of abuse and finally evict her from the home, and that the shooting was no accident, as the petitioner claimed. Finally, the testimony of the State's expert, Ms. Spriggs, could have led the jury to find that the actions of the petitioner, and the victim's failure to report those actions to authorities, were consistent with known patterns of behavior in abusive relationships.

In summary, in reviewing the State's evidence at trial in the light most favorable to the prosecution, this Court concludes that "any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *Brock*, 235

W. Va. at 397, 774 S.E.2d at 64, Syl. Pt. 8, in part. Accordingly, we decline to disturb the jury's verdict.

## IV.    Conclusion

For the foregoing reasons, the judgment of the Circuit Court of Berkeley County, West Virginia, is affirmed.

Affirmed.